THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing:                                    Mailed:
April 25, 2012                              August 14, 2012


**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Sadoru Group, Ltd.
_____

Serial No. 77941164
_____

Roger A. Gilcrest of Schottenstein Zox & Dunn Co., L.P.A.
for Sadoru Group, Ltd.

Amy E. Hella, Trademark Examining Attorney, Law Office 110
(Chris A.F. Pedersen, Managing Attorney).[1]
_____

Before Seeherman, Ritchie and Kuczma, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Sadoru Group, Ltd. has appealed from the final refusal

of the trademark examining attorney to register SADORU, in

the stylized form shown below, with SADORU disclaimed, for

"motorcycle parts and accessories, namely motorcycle seats

_____

[1] Ms. Hella was responsible for this application at the appeal
stage, writing the examiner's brief and appearing at the oral
hearing before the Board. A different examining attorney issued
the Office actions.

and ergonomic motorcycle pads for use with seats."[2]  The application includes the statement, "The English translation of 'SADORU' in the mark is 'saddle'."

**SADORU**

Registration has been refused pursuant to Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that applicant's mark is merely descriptive of the identified goods.

Applicant and the examining attorney submitted briefs, and both appeared at an oral hearing before the Board. With its appeal brief applicant submitted several third-party registrations, as well as an article on "Japanese calligraphy" taken from Wikipedia, that had not previously been made of record.  Trademark Rule 2.142(d) provides that the record in the application should be complete prior to the filing of an appeal, and that the Board will ordinarily not consider additional evidence filed with the Board after the appeal is filed.  However, the examining attorney in her brief specifically stated that she had no objection to the Board considering this untimely submitted evidence, and we have therefore done so.

---

[2]  Application Serial No. 77941164, filed February 22, 2010, based on Section 1(b) of the Trademark Act (intent-to-use).

The word "sadoru" is, as applicant's submitted translation shows, the Japanese word for "saddle." Under the doctrine of foreign equivalents, we must consider the meaning of the mark to those who speak Japanese. See In re Spirits International N.V., 563 F.3d 1347, 90 USPQ2d 1489, 1491 (Fed. Cir. 2009). The doctrine is applicable in this case because the record shows that the relevant English translation is literal and direct, the word comes from a common, modern language, and there is no contradictory evidence of another relevant meaning. See TMEP §1207.01(b)(vi). As applicant has stated in its brief, "The meaning of the SADORU word approximates to 'saddle' in the Japanese language, and the term itself has been disclaimed." Brief, unnumbered p. 4. Thus, applicant does not dispute that SADORU is at least descriptive. Further, the evidence shows that "sadoru" is at least highly descriptive, if not generic, for applicant's goods, which include "motorcycle seats." The examining attorney submitted definitions of "saddle" as meaning a "seat to be straddled by the rider of a vehicle (as a bicycle)"[3] and "seat on bicycle or motorcycle: a padded seat for a rider

---

[3] www.merriam-webster.com, submitted as part of May 4, 2010 Office action.

3

on a vehicle such as a bicycle, motorcycle, or tractor."[4]

Thus, the issue before us is whether the stylization of the lettering in which SADORU appears creates a separate and inherently distinctive commercial impression apart from the word itself, such that the mark as a whole is not merely descriptive. Although an entire mark cannot be disclaimed and also registered, nevertheless where the literal components of a mark are combined in a distinctive design or display it is possible to disclaim those literal components and still have a mark which is registrable as a whole. In re Jackson Hole Ski Corporation, 190 USPQ 175, 176 (TTAB 1976). A display of descriptive or otherwise unregistrable matter is not registrable on the Principal Register unless the design features of the asserted mark create an impression on the purchasers separate and apart from the impression made by the words themselves, or if it can be shown by evidence that the particular display which the applicant has adopted has acquired distinctiveness. In re Guilford Mills Inc., 33 USPQ2d 1042, 1043 (TTAB 1994). In the present case, applicant has not made a claim of acquired distinctiveness, and therefore the stylization of

---

[4] Encarta World English Dictionary (2009), submitted as part of October 22, 2010 Office action.

SADORU must create a separate and *inherently* distinctive impression.

Whether or not the disclaimed literal components of a designation sought to be registered are displayed in an inherently distinctive fashion is necessarily a subjective matter which must be determined based on a viewer's first impression. In re Grande Cheese Co., 2 USPQ2d 1447, 1449 (TTAB 1986); In re Jackson Hole Ski Corporation, 190 USPQ at 176 ("'[D]istinctive display' is in the eyes of the beholder, and usually depends upon the viewer's first impression of the matter in question."). Nevertheless, we may look to other decisions to get some sense of the stylizations that were found to create separate and inherently distinctive impressions, and those that were not.

The following marks were found not to be registrable on the Principal Register (i.e., the stylization was not inherently distinctive and applicants did not claim acquired distinctiveness):



for cheese, MOZZARELLA disclaimed. The Board
found that the lettering style of this mark was

not inherently distinctive, and did not create a separate commercial impression over and above that made by the generic word.  "We believe that whatever impact the style of the lettering may have is lost in the significance which the 'marks' have as highly descriptive or generic notations and we believe that the 'marks,' considered in their entireties, create only a single commercial impression, that is, that of a highly descriptive or generic notation."  In re Grande Cheese Co., 2 USPQ2d at 1449.



for microfiber fabric, MICRODENIER disclaimed. "[A]pplicant's mark is insufficiently stylized to create an inherently distinctive display that is registrable, without more, on the Principal Register."  In re Guilford Mills, Inc., 33 USPQ2d at 1044.

for gold and silver bullion jewelry, 24 K GOLD disclaimed.  The Board considered the literal elements of this mark so highly descriptive that they were unregistrable, in and of themselves, even on the Supplemental Register, and that the degree of distinctiveness of the design features were not sufficient for the mark as a whole to create a distinctive commercial impression separate and apart from the descriptive significance of its components.  Thus, in terms of determining whether the design features of the mark were sufficient to distinguish the mark, consideration was given to the nature of the

6

literal portion of the mark.  In re Project Five,
Inc., 209 USPQ 423 (TTAB 1980).

# FACIAL PLASTIC SURGERY

for, inter alia, training in plastic facial and
reconstructive surgery tecniques and association
services of promoting the interests of facial
plastic surgeons and reconstructive surgeons and
research in the field of plastic surgery and
reconstructive surgery, FACIAL PLASTIC SURGERY
disclaimed.  The Board stated that the display of
the words was "nothing but ordinary in nature and
does not create a commercial impression separate
and apart from the unregistrable components."
With respect to the underlining in the mark, the
Board indicated that "there is no evidence of
record that specifically points to recognition of
this common and prosaic feature in applicant's
asserted mark as the element which potential
purchasers or users of applicant's services have
come to recognize as the distinctive aspect
indicating origin in applicant."  In re American
Academy of Facial Plastic and Reconstructive
Surgery, 64 USPQ2d 1748, 1755 (TTAB 2002).

# CouriAire

for air freight forwarding services, COURIAIRE
disclaimed.  The Board stated that the design
features would not be likely to make an
impression on purchasers separate from the
impression made by the word COURIAIRE.  In re
Couriaire Express International, Inc., 222 USPQ
365, 366 (TTAB 1984).

The following marks were found registrable on the Principal Register, but only upon a showing of acquired distinctiveness; in other words, the stylization was not inherently distinctive.



    for beer, LITE disclaimed.  The Board stated that
    the features of the configuration of the
    disclaimed word LITE were not of such nature that
    they would inherently serve to distinguish
    applicant's mark in its entirety.  In re Miller
    Brewing Company, 226 USPQ 666, 669 (TTAB 1985).

    for smoker's pipes, PIPE and the representation
    of a smoking pipe disclaimed, with registration
    sought pursuant to the provisions of Section
    2(f), and the Board stating that "applicant is
    under a heavy burden to establish that such
    designation has become distinctive of its goods
    in commerce."  In re Venturi, Inc., 197 USPQ 714,
    717 (TTAB 1977).

    See, also, In re K-T Zoe Furniture, 16 F.3d 390,
    29 USPQ2d 1787 (Fed. Cir. 1994), in which the
    applicant sought to register the mark shown below
    for custom manufacture of furniture pursuant to
    Section 2(f).  The Board found that the applicant
    had shown acquired distinctiveness only for the
    stylized script, and the issue on appeal to the
    Court was whether THE SOFA & CHAIR COMPANY had to
    be disclaimed.  The Court held that  the words
    and the stylized script of "the sofa & chair
    company" are separable elements and that only the

stylized script in the mark had been shown to
have acquired secondary meaning.



In addition, the following marks were registered on
the Supplemental Register, with either the Board or the
Court finding that the stylization was only *capable* of
distinguishing the goods, i.e., the stylization was not
inherently distinctive.[5]

**balsam**

for hair conditioner and hair shampoo, BALSAM
disclaimed.  In re The Wella Corporation, 565
F.2d 143, 196 USPQ 7 (CCPA 1977).

**YOGURT BAR**

for candy bars, YOGURT BAR disclaimed.  In re
Carolyn's Candies, Inc., 206 USPQ 356 (TTAB
1980).

**SCHOOL BOOK FAIRS, Inc.**

for providing children's books to schools and
school related organizations for use in school
fundraising programs, SCHOOL BOOK FAIRS, INC.

---

[5]  It should be noted that the question of the capability of the
instant applicant's mark to distinguish its goods is not before
us.

9

disclaimed.  In re School Book Fairs, Inc., 229 USPQ 556 (TTAB 1986)

And the following mark, applied for on the Supplemental Register for a plastic dish for supporting foodstuffs while being cooked in microwave ovens (in other words, a turntable for use in a microwave), with MICROWAVE and TURNTABLE disclaimed, was found not to be capable of functioning as a mark, with the stylization considered completely ordinary and nondistinctive.  In re Anchor Hocking Corporation, 223 USPQ 85 (TTAB 1984).

**MICROWAVE TURNTABLE**

On the other hand, the following marks were held to be registrable on the Principal Register without a showing of acquired distinctiveness.

**JACKSON HOLE**

for providing skiing resort facilities, JACKSON HOLE disclaimed.  Because of the display of the letters JH (twice the size of the other letters and partly joined together), the Board found they created the visual impression of a monogram, and their positioning below the other letters had the effect of highlighting them.  In re Jackson Hole Ski Corporation, supra.

10

for components used to construct personal storage systems.  The Board found the tube-like rendition of the letter "C" in the words "construct" and "closet" made a striking commercial impression separate and apart from the word portion, although the merely descriptive words CONSTRUC-A-CLOSET were required to be disclaimed.  In re Clutter Control Inc., 231 USPQ 588, 589 (TTAB 1986).

See In re American Academy of Facial Plastic and Reconstructive Surgery, 64 USPQ2d at 1754-55, for additional cases involving the distinctiveness of a stylized word mark consisting of descriptive or generic literal elements.

Applicant argues that the stylization of its mark makes it inherently distinctive, asserting, in part, that:

> the hand-drawn script creates an impression taken from the Japanese ink-style script that gives a collective appearance to the mark of a distinctive oriental flavor reminiscent of the ink brush strokes of Japanese (or other Oriental) calligraphy...."  Brief, unnumbered p. 4.

> the mark "immediately creates a mental reference to Japanese, particularly to ancient Japan and Japanese, and an associated commercial impression."  Brief, unnumbered p. 5.

Applicant has submitted with its brief examples of Japanese calligraphy, taken from Wikipedia,[6] and we must agree with the examining attorney that the lettering in applicant's mark is not the same as the calligraphy pictured in the Wikipedia article, as shown below:



Although the letters in applicant's mark, shown below,



are not of uniform thickness, the letters appear to be much more in the nature of slightly stylized block lettering than they do as a form of Asian-style lettering. Certainly

---

[6] As noted above, although this exhibit was not timely submitted during prosecution, the examining attorney specifically stated that she had no objection to its being considered.

they do not look like the brushstrokes of Japanese calligraphy, as shown in the example submitted by applicant. As a result, consumers are not likely to view the stylization of SADORU as a Latin alphabet version of Japanese characters. Further, although the tops of the letters "dip" to give the upper portion of the mark a slightly concave shape, the depression is so minimal that it is not likely to make a significant impression on consumers. There is no evidence that Japanese words are generally depicted in such a manner that would support applicant's claim that the stylization of the mark conveys a Japanese or "oriental" impression. On the contrary, the examples in the Wikipedia article show the characters written in a vertical fashion, not from left to right with a concave top to them.

Applicant contends that "the Examining Attorney has attempted to impose some improper and erroneous form of 'stylization calculus'" because she has pointed out that applicant's proposed mark does not contain as much stylization as those in other marks that the Board found to be not inherently distinctive. Brief, unnumbered p. 5. Applicant claims that the examining attorney's "analysis is faulty (i.e., that the fact that the subject mark may be denied registration simply because some 'more stylized'

13

marks were not afforded Principal Register registration)." Brief, unnumbered p. 6. Instead, applicant asserts that the examining attorney "should not compare the subject mark to relatively 'more stylized' marks, but rather consider the mark as presented." Id. At the same time, applicant points to several third-party registrations of stylized word marks in which the wording has been disclaimed, thus indicating that the stylization was found to be distinctive.

As noted, the determination of whether the stylization of a term that is otherwise unregistrable is a subjective one, which depends on the individual mark. Because of this, the fact that examining attorneys have considered the stylization of other, different marks to be sufficient to make those marks distinctive is of limited probative value. Certainly we find more persuasive decisions by a Court or the Board which give the reasons supporting a finding that the stylization of a mark is distinctive, or not distinctive. However, we note that even the registered marks that applicant has submitted have a more distinctive stylization than applicant's mark, examples of which are shown below:

Registration No. 3953749 for



registered on the Principal Register, with CONTOUR PRO disclaimed, for electronic storage media featuring maps and other geographic information, has wavy lines inside each letter representing geographic features and formations;

Registration No. 3681484 for

(colors blue and purple claimed as features of the mark) registered on the Principal Register for O-rings, rubber pipe gaskets and other seals, with SUPERIOR disclaimed, features highly stylized lettering comprising unusual combinations of geometric shapes and bars; and

Registration No. 3041101 for



registered on the Principal Register for "wood carvings, namely design and words cut into wood creating a 3-dimensional effect," with WOOD SCRIPT disclaimed, creates a monogram effect similar to the JACKSON HOLE mark found registrable in In re Jackson Hole Ski Corporation.

In any event, ultimately the decision we make in this case must be based on the particular facts and record herein.  See In re Nett Designs Inc., 236 F.3d 1339,

57 USPQ2d 1564 (Fed. Cir. 2001); In re Couriaire Express International, Inc., 222 USPQ at 366 ("That each case must be determined on its own facts is a proposition so well established that no authority need be cited in support of it"). After considering the case law involving the registrability of marks consisting of merely descriptive or generic words depicted in stylized format, and applying it to the facts of this case, we find that the stylization of the lettering in which SADORU appears does not create a separate and inherently distinctive commercial impression apart from the word itself. Thus, we find that the mark as a whole is merely descriptive.[7]

Decision: The refusal of registration is affirmed.

---

[7] We make no comment as to whether applicant's applied-for matter is capable of distinguishing its goods, or could, through use, acquire distinctiveness. Those questions are not before us.